# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WILDEARTH GUARDIANS, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> KEN SALAZAR, U.S. SECRETARY OF THE INTERIOR, ) <br> sued in his official capacity, ) <br> ) <br> Defendant. ) <br> ) | Civil Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiff, WildEarth Guardians ("Guardians") brings this action against Defendant, Ken Salazar, U.S. Secretary of the Interior (the "Secretary"), in his official capacity. Guardians challenges the Secretary's rejection of its petition to "list," and thereby protect, a very rare flowering plant, the Many-flowered Unicorn-plant, *Proboscidea spicata* ("the Unicorn Plant"), as a threatened or endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq. Guardians alleges that the Secretary's decision to deny its petition violates the ESA, and is therefore arbitrary, capricious, and contrary to law within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. To remedy the Secretary's violation of law, Guardians seeks a declaratory judgment that the Secretary's decision violates the ESA and APA and an injunction reversing and remanding the Secretary's decision and directing him to proceed with the ESA listing process for the Unicorn Plant by a date certain.

## JURISDICTION AND VENUE

2.	This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. as a defendant), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision), 5 U.S.C. §§ 701-706 (APA), and the Equal Access to Judgment Act ("EAJA"), 28 U.S.C. § 2412 et seq.

3.	This Court has authority to grant Guardians' requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief) and 5 U.S.C. §§ 701-706 (APA).

4.	More than 60 days ago, by letter dated January 28, 2009, Guardians furnished the Secretary with written notice of the ESA violations alleged in this Complaint and of its intent to sue.  See 16 U.S.C. § 1540(g).  The Secretary acknowledged receipt of this letter on or about February 23, 2009.

5.	The Secretary has not remedied his violations of the ESA and APA by reversing his negative finding on Guardians' listing petition.  Therefore, an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

6.	The federal government has waived sovereign immunity in this action pursuant to the ESA, 16 U.S.C. § 1540(g), and the APA, 5 U.S.C. § 702.

7.	Venue properly lies in this judicial district by virtue of 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).  The U.S. Fish and Wildlife Service ("FWS"), the administrative agency to which the Secretary has delegated his ESA duties, maintains a Regional Office, which is directly responsible for making the challenged finding on Guardians' petition, in Albuquerque, New Mexico.  Guardians is incorporated within the State of New Mexico and maintains its principle place of business in Santa Fe, New Mexico.

## PARTIES

8. Plaintiff WILDEARTH GUARDIANS ("Guardians") sues on behalf of itself and its adversely affected members. WildEarth Guardians was created on January 28, 2008, from the merger of three organizations: Forest Guardians, Sinapu, and the Sagebrush Sea Campaign. Guardians has approximately 4,500 members that live throughout the country, including western Texas where the Unicorn Plant has historically occurred. Guardians works to protect and restore wildlife, wild places, and wild rivers in the American West. Guardians has an active endangered species protection program that seeks to add all qualifying species, such as the Unicorn Plant, to the list of threatened and endangered species protected under the ESA.

9. Forest Guardians, now WildEarth Guardians, filed the initial petition to list the Unicorn Plant on June 18, 2007. WildEarth Guardians continues these efforts to protect the Unicorn Plant and its habitat. WildEarth Guardians filed a second, separate petition to list the Unicorn Plant on an emergency basis on June 12, 2008. Guardians invested significant resources into preparing the initial listing petition, the supplemental emergency listing petition, and pursuing previous litigation to compel the Secretary to respond to these petitions. The Secretary rejected Guardians' emergency listing petition for the Unicorn Plant. Guardians' effort to secure judicial review of the Secretary's rejection of its emergency listing petition was unsuccessful. The present lawsuit challenges only the Secretary's rejection of Guardians' original June 2007 petition, not the June 2008 emergency petition.

10. Guardians' members and staff use and enjoy areas that provide habitat for the Unicorn Plant for recreational, aesthetic, and scientific activities, and will continue to do so. Due to the extreme rarity of the Unicorn Plant, Guardians' members and staff have not observed this species. However, Guardians' members and staff recreate in the historic habitat of the Unicorn

Plant, looking for this species and photographing other rare plants, and intend to continue to do so. Guardians and its members have a substantial interest in the conservation of the Unicorn Plant, and are adversely affected by the Secretary's rejection of the petition to list the species under the ESA. The requested relief will redress Guardians' and its members' injuries.

11.     Defendant, KEN SALAZAR, is the Secretary of the United States Department of the Interior. As such, he has ultimate responsibility for implementation of the ESA. The Secretary is sued in his official capacity. In this case, the Secretary has delegated his responsibilities under the ESA to the U.S. Fish and Wildlife Service ("FWS"), an agency within the U.S. Department of the Interior.

### STATUTORY FRAMEWORK OF THE ENDANGERED SPECIES ACT

12.     The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species …." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." Id. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to temporarily save endangered and threatened species from extinction, but also to recover these species to the point where they are no longer in danger of extinction and thus no longer need ESA protection.

13.     The protective provisions of the ESA do not do anything to conserve a species, however, until that species is officially "listed" as either threatened or endangered under the terms of the Act. A species is listed as "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is listed as "threatened"

4

if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20).

14. The Secretary is required to list as either threatened or endangered any species facing extinction due to any one, or any combination of, the following five factors:

    A. the present or threatened destruction, modification, or curtailment of the species' habitat or range;

    B. overutilization for commercial, recreational, scientific, or educational purposes;

    C. disease or predation;

    D. the inadequacy of existing regulatory mechanisms; or

    E. other natural or manmade factors affecting the species' continued existence.

16 U.S.C. §§ 1533(a)(1)(A)-(E).

15. The Secretary's decision whether to list a species is limited solely to consideration of these five factors. In considering these factors, the Secretary must use solely "the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b).

16. Any interested person may file a petition with the Secretary to list, uplist (from threatened to endangered), downlist (from endangered to threatened), or delist a species under the ESA. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b).

17. Upon receiving a listing petition, the Secretary must, "to the maximum extent practicable," determine within 90 days whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. §

1533(b)(3)(A). "Substantial information" is that "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b). This initial determination is known as a "90-day finding."

18. The Secretary's initial 90-day review of a listing petition is not exhaustive and is limited to a determination of whether the petition meets the "substantial information" threshold. At the 90-day finding, the Secretary accepts the petitioner's sources and characterizations of the information unless he has specific information to the contrary. See e.g., 69 Fed. Reg. 60605-06 (2004).

19. If the Secretary makes a positive 90-day finding, then the Secretary must commence a thorough status review of the species. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. §424.14(b)(3). After the status review, the Secretary must determine whether the petitioned action is warranted, not warranted, or warranted but presently precluded by other more important listing actions. See 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b).

20. If the Secretary finds that listing is warranted, he must publish a proposed listing regulation in the Federal Register. See 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of this publication, the Secretary is required to render a final determination on the proposal. See id. § 1533(b)(6)(A). At such time, the Secretary must either list the species, withdraw the proposal, or if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information. See id. §§ 1533(b)(6)(A)(1)(III) and (b)(6)(B)(i).

21. The ESA expressly provides that a negative 90-day finding may be challenged in federal court. See 16 U.S.C. § 1533(b)(3)(C)(ii).

## STATEMENT OF FACTS

### I.   The Many-flowered Unicorn Plant



22.   The Many-flowered Unicorn Plant is a flowering plant scientifically described as a plant in the family *Pedaliaceae*, genus *Proboscidea*, and species *Proboscidea spicata*. It has been collected a total of four times and has not been seen since 1967. The Unicorn Plant is pictured here courtesy of Chester Rowell.

23.   The Unicorn Plant is confined to dry sandy alluvial and/or eolian soils on terraces along the Rio Grande, and/or in dry, sandy habitats in the trans-Pecos (west Texas) and Coahuila (northern Mexico) region. It is a spreading, branched annual covered with sticky hairs, and it is distinguished from other species in the *Proboscidea* genus by its inflorescence of numerous, small flowers. The Unicorn Plant produces 25 or more small, pinkish flowers crowded on a 12-13 centimeter stalk. It is believed to flower between May and June, but may flower as late as August. The fruit of the Unicorn Plant is unobserved but presumed to be an elongated, beaked, and drupaceous capsule that dries into a woody "devils claw," similar to other species of the genus *Proboscidea*. The long, hooked seed pods catch on the feet of animals and, as the animals walk, the pods are ground or crushed open, dispersing the seeds.

### II.   NatureServe

24.   NatureServe is a non-profit organization. Its mission is to provide a scientific basis for effective conservation action. NatureServe is comprised of a network of over 80

Natural Heritage Programs and conservation data centers throughout all 50 States, Latin America, and the Caribbean. It compiles the work of nearly 1,000 scientists and has an annual budget of approximately 45 million dollars.

25. NatureServe maintains an online encyclopedia, called NatureServe Explorer. NatureServe Explorer maintains the best available scientific information on approximately 50,000 plants, animals, and ecological communities in the U.S. and Canada. FWS has referred to NatureServe Explorer as an authoritative source for conservation information on thousands of species. FWS has also acknowledged that NatureServe Explorer provides in-depth information on rare and endangered species. FWS relies on NatureServe's system, ranking species by their degree of imperilment, in its own efforts to rank species within FWS's priority system.

26. NatureServe ranks species by their degree of imperilment. The highest possible rank, indicating the highest degree of imperilment, is G1. A G1 ranking indicates a full species is critically imperiled and is at very high risk of extinction due to extreme rarity (often five or fewer populations), very steep population declines, or other factors. NatureServe ranks the Unicorn Plant as G1.

**III.   Guardians' Efforts to Protect the Unicorn Plant and the Secretary's Actions**

27. On or about June 18, 2007, Guardians petitioned the Secretary to list as threatened or endangered under the ESA all species ranked as G1 (critically imperiled) or G1G2 (critically imperiled or imperiled) by NatureServe in FWS's Southwest Region. Guardians excluded subspecies and species already listed, or identified as candidates for listing, by the Secretary from its request. Guardians' hope was that the Secretary could use the substantial expertise and previous efforts used to compile the NatureServe list of critically imperiled species to properly expand the Secretary's own list of threatened and endangered species. Through its petition,

8

Guardians sought to make the process of listing species under the ESA more efficient and quicker by taking advantage of existing resources, such as the NatureServe Explorer database, and to avoid duplicating the efforts of others. Accordingly, Guardians incorporated by reference all analysis, references, and documentation provided by NatureServe into its petition. The Unicorn Plant was one of the species included in Guardians' June 2007 listing petition.

28. On or about July 11, 2007, FWS responded to Guardians' petition and noted that the petition incorporated all analysis, references, and documentation provided by NatureServe in its online database into the petition. FWS failed, however, to render the requisite 90-day finding on Guardians' petition to list the Unicorn Plant.

29. On or about October 3, 2007, Guardians sent the Secretary a notice letter indicating that it would file suit to force the Secretary to make an initial 90-day finding on Guardians' petition. When the Secretary failed to respond to Guardians' notice letter, Guardians filed suit in federal court on March 19, 2008. See 1:08-cv-00472-CKK (D.D.C.).

30. On or about May 12, 2008, FWS communicated with Guardians, and again acknowledged that the petition incorporated all analysis, references, and documentation provided by NatureServe in its online database into the petition. FWS further communicated that it could not find particular references discussed by NatureServe for some of the species included in the petition. Guardians provided a supplemental source for this species on July 14, 2008, as requested by FWS.

31. On or about June 12, 2008, Guardians filed a second petition, captioned as an emergency listing petition, for 32 species. Of all of the critically imperiled, G1 species previously petitioned by Guardians, the 32 species in the emergency listing petition are the species Guardians believes most in danger of immediate extinction because they have either only

a single known, or no known, populations. In the emergency listing petition Guardians also indicated that if the Secretary did not believe that emergency listing these species was appropriate, he should consider the information provided in the emergency listing petition as supplemental information on Guardians prior, June 2007 petition.

32. With respect to the Unicorn Plant, Guardians' emergency listing petition stated:

> *Proboscidea spicata* historically occurred in Texas and Coahuila, Mexico in terraces along the Rio Grande as well as roadsides. There have been four total historical collections. Although it has been searched for, it hasn't been seen since 1967.

Guardians' petition also provided a copy of the entire NatureServe individual account for the Unicorn Plant and the New Mexico Comprehensive Wildlife Conservation Strategy.

33. On or about July 22, 2008, the Secretary denied Guardians' emergency listing petition for the Unicorn Plant.

34. Subsequently, on January 6, 2009, the Secretary denied Guardians' original June 2007 petition for the Unicorn Plant. See 74 Fed. Reg. 419-27 (2009). In this decision, the Secretary used a classification scheme to explain the rationale for the numerous negative 90-day findings made in the same document. The Secretary denied the Unicorn Plant based on rationale B. Category B indicates that the Secretary determined the petition and the NatureServe database:

> contained basic information on the range of the species, based on some level of survey effort. Habitat was frequently mentioned as well as other aspects of the species' biology, such as food habitats. Population size or abundance, if addressed, was rarely quantified, and the database instead used descriptors such as large, small, or numerous. The available information we reviewed did not address specific threats to the species.

74 Fed. Reg. 419 at 421.

35. The Secretary's rationale for his 90-day finding on Guardians' petition as to the Unicorn Plant is factually incorrect. Contrary to the Secretary's description of a species assigned

to Category B, Guardians provided the Secretary with a description of the only known locations of the species. Contrary to the Secretary's contention that Guardians did not address the species' population size or abundance, Guardians indicated that only four collections of plants have historically been made, and that the best available information indicates that no Unicorn Plant has been seen since 1967.

36. The Secretary's decision that the Unicorn Plant is not threatened by rarity or few populations is inconsistent with other decisions and positions taken by the Secretary. For each of the following species, the Secretary has determined that the species' low numbers or the low number of populations of the species is a threat to the species continued existence, making its listing under the ESA warranted: *Partula langfordi; Myrsine mezii; Megalagrion nesiotes; Tryonia circumstriata; Ostodes strigatus; Doryopteris takeuchii; Melicope degeneri; Huperzia stemmermanniae; Peperomia subpetiolata; Melicope hiiakae; Phyllostegia bracteata; Noturus crypticus; Pyrgulopsis chupaderae; Leavenworthia texana; Ptychobranchus jonesi; Phacelia stellaris; Drosophila attigua; Villosa fabilis; Partulina semicarinata; Newcombia cumingi; Platydesma remyi;* and *Megalagrion leptodemas.*

37. The Secretary's decision to issue a negative 90-day finding on the Unicorn Plant even though the best available information indicates the species has no known populations is inconsistent with the Secretary's most recent decision to issue a positive 90-day finding for the Tehachapi slender salamander. The Secretary issued a positive 90-day finding for the Tehachapi slender salamander, in part, because the species has only two known populations and thus is vulnerable to extinction by stochastic events.

38. Because the Secretary's decision to issue a negative 90-day finding for the Unicorn Plant is neither supported by the facts in the record before the agency, nor consistent

11

with positions the Secretary has taken for dozens of other species, Guardians has brought this litigation.

## CLAIM FOR RELIEF

39.     The allegations of all preceding paragraphs of this Complaint are incorporated herein by reference.

40.     The Secretary's 90-day finding that Guardians' ESA listing petition did not present evidence that would lead a reasonable person to believe that the listing of the Unicorn Plant as threatened or endangered may be warranted, failed to use the best available science, relied on an improper evidentiary standard, failed to consider significant threats to the Unicorn Plant addressed in the petition, failed to articulate a rational connection between the facts found and its conclusion, and is otherwise arbitrary, capricious, and contrary to law in violation of the ESA within the meaning of the APA.  See 16 U.S.C. § 1533(b); 5 U.S.C. §§ 701-706.

## REQUEST FOR RELIEF

WHEREFORE, Guardians requests that this Court enter judgment providing the following relief:

(A)     A declaration that the Secretary violated the ESA and APA by issuing an unlawful 90-day finding on Guardians' petition to list the Many-flowered Unicorn Plant as a threatened or an endangered species;

(B)     An injunctive order requiring the Secretary to withdraw his unlawful 90-day finding and issue a new finding by a date certain;

(C)     An order awarding Guardians its costs of litigation including reasonable attorneys' fees as provided by the ESA, 16 U.S.C. § 1540(g), and/or the EAJA, 28 U.S.C. § 2412; and

(D)   Such other further relief as the Court deems just and proper.

Dated: February 10, 2010.

        Respectfully submitted,

        <u>/s/ Melissa Anne Hailey</u>
        Melissa Anne Hailey
        New Mexico State Bar No. 25817
        WildEarth Guardians
        1536 Wynkoop Street, Suite 301
        Denver, CO 80202
        (505) 988-9126 ext. 1159
        mhailey@wildearthguardians.org

        *Attorney for Plaintiff WildEarth Guardians*