UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

Plaintiff,

v. Civ. No. 10-116-MV-RHS

KEN SALAZAR,
*U.S. Secretary of the Interior, sued in his official capacity*,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the parties' cross-motions for summary judgment (Docs. 23, 37) and Defendant's *Motion to Strike Extra-Record Material* (Doc. 38). In an action for declaratory and injunctive relief against U.S. Secretary of the Interior Ken Salazar (hereinafter, "Defendant" or "the Secretary"), Plaintiff WildEarth Guardians ("Plaintiff"), a non-profit environmental welfare organization, challenges Defendant's rejection of its petition to list the "many-flowered unicorn plant," *Proboscidea spicata*, as a threatened or endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, et seq. Defendant responds that Plaintiff does not have organizational standing to sue on behalf of its members and that, even if Plaintiff could establish standing, Plaintiff's petition failed to offer substantial information supporting placement of the many-flowered unicorn plant on the ESA list. The Court, having considered the motions, briefs, exhibits, administrative record, and other relevant law, and being otherwise fully informed, finds that Defendant's motion to strike should be **GRANTED**, Plaintiff's motion for summary judgment should be **DENIED**, and Defendant's motion for summary judgment should be **GRANTED**.

**STATUTORY BACKGROUND**

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). It

"provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species." *Id.* at 180 (quoting 16 U.S.C. § 1531(b)). An animal or plant species must be listed as either "endangered" or "threatened" by the Secretary of the Interior[1] pursuant to the ESA in order to obtain the heightened protections of the Act. An "endangered species" is defined by the ESA as "any species which is in danger of extinction throughout all or a significant portion of its range . . .," 16 U.S.C. § 1532(6), while a "threatened species" is any species "which is likely to become an endangered species within the foreseeable future. . .," *id.* § 1532(20).

A species comes to be listed under the ESA in one of two ways – either on the Secretary's own initiative or, as relevant to the instant case, in response to a petition submitted by an "interested person." *Id.* §§ 1533(a)(1), 1533(b)(3). The ESA sets forth specific procedural steps for determining whether a species will be listed following the submission of a petition. Within 90 days of receiving a listing petition, the Secretary must, "[t]o the maximum extent practicable" determine whether the petition presents "substantial scientific or commercial information[2] indicating that the petitioned action may be warranted," a process known as the "90-day finding." *Id.* § 1533(b)(3)(A). If the Secretary determines that the listing is not warranted, the listing process for that species is terminated. *See id.* If the Secretary determines that the petitioned action is warranted, the ESA provides that the "Secretary shall promptly commence a review of the status of the species concerned." *Id.* In either event, the 90-day finding is published in the Federal Register. *Id.*

---

[1]The Secretary has delegated his listing-determination duties to the United States Fish and Wildlife Service ("FWS") with respect to terrestrial species. *See* 50 C.F.R. § 402.01(b). Thus, the Court refers to Secretary of the Interior Salazar; his predecessor, Dirk Kempthorne; and the FWS as "the Secretary" and "the Defendant" throughout this Memorandum Opinion.

[2]"Substantial information" is defined as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1).

For those petitions that survive the initial examination of the 90-day finding, the Secretary is required to make a finding within 12 months of receiving the listing petition – known as the "12-month finding" – as to whether listing of the species is either: (1) not warranted; (2) warranted, but precluded by higher listing priorities; or (3) warranted, in which case the Secretary must publish a proposed rule to list the species in the Federal Register. *Id.* § 1533(b)(3)(B). The ESA permits no exceptions to this 12-month mandatory deadline.

A listing determination is made on the basis of one or more of five statutorily prescribed factors:

> (A) the present or threatened destruction, modification, or curtailment of the species' habitat or range;
>
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
>
> (C) disease or predation;
>
> (D) the inadequacy of existing regulatory mechanisms; or
>
> (E) other natural or manmade factors affecting the species' continued existence.

16 U.S.C. §§ 1533(a)(1)(A)-(E); 50 C.F.R. § 424.11(c). Once a species is listed under the ESA, the Secretary is empowered to "issue such regulations as he deems necessary and advisable to provide for the conservation of such species." *Id.* § 1533(d).

## FACTUAL BACKGROUND

This litigation centers on Plaintiff's unsuccessful petition to list the many-flowered unicorn plant -- a flowering plant historically found in west Texas and Coahuila, Mexico – as endangered or threatened under the ESA. The parties heavily dispute many of the facts in evidence relating to the alleged rarity of the many-flowered unicorn plant.

***The NatureServe Database***

Plaintiff's petition sought to incorporate information about the many-flowered unicorn plant collected by NatureServe, a non-profit organization whose mission is to provide a scientific

basis for effective conservation action. NatureServe represents an international network of over 80 member programs, each of which analyzes and provides scientific information about the biological diversity found within their jurisdictions. NatureServe collects its members' submissions in its online database, where it ranks more than 70,000 different species of animals and plants according to their risk of extinction. The database designates the conservation status of every included species by a number from 1 to 5 (with 1 = critically imperiled, 2 = imperiled, 3 = vulnerable, etc.), preceded by a letter reflecting the geographic scale of the assessment (G = Global, N = National, and S = Subnational). The many-flowered unicorn plant is categorized at the highest rate of imperilment -- "G1," for critically imperiled across its entire range – in the NatureServe database.

Defendant considers NatureServe rankings in allocating resources among "candidate species" -- those species for which he has sufficient information on their biological status to propose them as endangered or threatened under the ESA. *See, e.g.*, 75 Fed. Reg. 56028, 56043 (2010).

***Plaintiff's June 2007 Petition***

On or about June 18, 2007, Plaintiff petitioned Defendant to list as endangered or threatened under the ESA every species ranked as "G1" or "G2" by NatureServe in Defendant's Southwest Region, which encompasses Arizona, New Mexico, Oklahoma, and Texas. The petition included some 475 species, including the many-flowered unicorn plant. Plaintiff's petition did not include a written statement providing individual support for the proposition that the many-flowered unicorn plant should be listed under the ESA. Rather, the petition stated that it "hereby incorporate[d] all analysis, references, and documentation provided by NatureServe in its on-line database . . . by reference, including all data and analysis underlying its conservation status classification scheme." (Administrative Record, Doc. 7 at 000017).

Defendant did not issue a finding on Plaintiff's petition within 90 days of its receipt.

On October 3, 2007, Plaintiff notified Defendant by letter that it intended to file suit to

force him to make a 90-day finding on the ESA eligibility of the 475 species named in Plaintiff's petition. Defendant did not respond to Plaintiff's notice letter, and on March 19, 2008, Plaintiff filed suit in the U.S. District Court for the District of Columbia seeking, *inter alia*, a declaratory judgment that Defendant violated the ESA by not making a timely 90-day ruling and an injunction compelling such a ruling on each of the species included in the June 2007 petition. *See WildEarth Guardians v. Kempthorne,* 1:08-cv-00472-CKK (D.D.C.).

On May 12, 2008, Defendant contacted Plaintiff about references provided by NatureServe in its database entries on certain species claimed in Plaintiff's petition which Defendant could not locate. Plaintiff provided the requested material on July 14, 2008.

***Plaintiff's June 2008 "Emergency" Petition***

On June 12, 2008, Plaintiff filed a second petition, captioned as an "emergency listing petition," on behalf of 32 species previously listed in the original, 475-species petition, including the many-flowered unicorn plant. The petition stated that each of the included species should be listed as endangered or threatened under the fifth, catch-all listing factor: because of "other natural or manmade factors affecting the species' continued existence." 16 U.S.C. § 1533(a)(1)(E). Plaintiff noted that each of the 32 species "occur[s] in only one current known location (or no known locations), [so that] they are vulnerable to systematic pressures or random/stochastic events causing total extirpation or extinction. We consider this threat under ESA listing Factor E." (Administrative Record, Doc. 202 at 001673). However, Plaintiff did not identify any systematic pressures or random events to which the many-flowered unicorn plant was specifically vulnerable.

With regard to the many-flowered unicorn plant, Plaintiff's emergency petition stated that its range was known to be "Texas and Coahuila, Mexico in terraces along the Rio Grande as well as roadsides, that "[t]here have been four total historical collections," and that the plant "hasn't been seen since 1967." *Id.* at 001683. Plaintiff further provided a copy of NatureServe's entry on the many-flowered unicorn plant.

Plaintiff noted that if the Defendant did not believe that an "emergency listing" of the 32 species was appropriate, Defendant should consider the new petition as a supplement to the original June 2007 petition.

***Defendant Denies Both Petitions***

On July 22, 2008, Defendant denied Plaintiff's supplemental emergency listing petition to list the many-flowered unicorn plant under the ESA, finding that Plaintiff failed to provide substantial information supporting its listing. Defendant's 90-day finding concluded that "[p]opulation size or abundance, if addressed, was rarely quantified, and the database instead used descriptors such as large, small, or numerous," and failed to address specific threats to the species.

On January 6, 2009, Defendant denied Plaintiff's original 2007 petition for the many-flowered unicorn plant.[3] On February 10, 2010, Plaintiff filed a Complaint in the instant case.

## LEGAL STANDARD

***Review of an ESA Listing Determination***

The Secretary's ESA listing determinations are subject to review under the Administrative Procedure Act ("APA"). *See, e.g., Biodiversity Legal Foundation v. Babbitt,* 146 F.3d 1249, 1252 (10th Cir. 1998); *Am. Wildlands v. Kempthorne,* 530 F.3d 991, 997 (D.C. Cir. 2008). The standard of review under APA review is narrow, as the court cannot "substitute its judgment for that of the agency," where the agency articulated a "rational connection between the facts found and the choices made." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc*., 419 U.S. 281, 285 (1974). Thus, a federal agency action should only be set aside as

[3] The parties agree that the July 2008 petition should be considered a supplement to the original 2007 petition, rather than a second, stand-alone petition. Plaintiff clarifies that the instant suit challenges only Defendant's denial of the original June 2007 petition with regard to the many-flowered unicorn plant. (Doc. 23 Ex 1 at 11).

unlawful where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In determining whether an agency acted in an arbitrary and capricious manner under the APA, the court "must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment." *Colorado Environmental Coalition v. Dombeck*, 185 F.3d 1162, 1167 (10th Cir. 1999). An administrative decision is arbitrary and capricious "if the agency relies on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citations and internal quotations omitted). "While the court may not supply a reasoned basis for the agency's action not given by the agency itself, the court should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *WildEarth Guardians v. United States Forest Servs*., 668 F.Supp.2d 1314, 1325 (D.N.M. 2009), quoting *Bowman*, 419 U.S. at 286 (1974) (internal citations omitted).

***Motion to Strike Extra-Record Material***

The court may, acting on its own or on a motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. Rule Civ. P. 12(f). A matter is redundant where it "consist[s] of allegations that constitute a needless repetition of other averments or which are wholly foreign to the issue to be decided." *Center for Native Ecosystems v. FWS*, No. 08-cv-2744, 2010 WL 2035580, at *2 (D. Colo., May 20, 2010) (citations omitted). It is immaterial if "it has no essential or important relationship to the claim for relief pleaded," impertinent if it is "not necessary to the issues in question in the case," and scandalous if it "degrade[s] defendant's moral character, contain[s] repulsive language, or detract[s] from the dignity of the court." *Id.* (citations omitted).

"[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike

motions and memoranda." *Searcy v. Soc. Security Admin*., No. 91-4181, 1992 WL 43490, at *3 (10th Cir., March 2, 1992) (unpublished). "Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore et.al., *Moore's Federal Practice* § 12.37[2] (3d ed. 2004)."

## DISCUSSION

### I. Defendant's Motion to Strike Extra-Record Material

Defendant moves the Court for an order striking from the record two documents or portions of documents submitted by Plaintiff for the first time in support of its summary judgment motion: (1) a printout from the NatureServe database providing information on the many-flowered unicorn plant, showing that the entry was last updated in August 2010 (Doc. 23 Ex. 3); and (2) those portions of the October 7, 2010 affidavit of Plaintiff employee Dr. Nicole Rosmarino that do not relate to Rosmarino's claim to individual standing in this case (Doc. 23 Ex. 2). Plaintiff argues that because these documents were generated over a year after Defendant published its 90-day finding rejecting the many-flowered unicorn plant from the protections of the ESA, they are not part of the Administrative Record and thus are not properly before the Court. Plaintiff responds only that it "did not rely and/or does not need to rely on either of these documents to support the merits of its claim." (Doc. 39 at 1).

The Court agrees that "judicial review of agency action is normally restricted to the administrative record," and that consideration of extra-record materials is appropriate only in "'extremely limited' circumstances, such as where the agency ignored relevant factors it should have considered or considered factors left out of the formal record." *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004); *see also Florida Power & Light Co, v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing

court."). Here, Plaintiff has not only failed to set forth any special circumstance at issue, but has also characterized the August 2010 NatureServe printout as "superfluous" and the portions of Dr. Rosmarino's affidavit not relating to standing as irrelevant to the merits of its claim. (Doc. 39 at 6, 8). Thus, the Court finds that Defendant's motion to strike should be granted.

**II. Plaintiff's Article III Standing**

Defendant contends that Plaintiff lacks standing to obtain relief on behalf of its members under Article III of the Constitution, "which restricts federal court adjudication to actual cases or controversies." *Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998); *see also San Juan County v. United States*, 420 F.3d 1197, 1203 (10th Cir. 2005). The Tenth Circuit has repeatedly noted that "standing to invoke the power of the federal courts is not a mere technical hoop through which every plaintiff must pass, but rather is a part of the basic charter promulgated by the Framers of the Constitution." *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006); *see also Babbitt*, 137 F.3d at 1202; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982). *See also Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (noting that doctrine of standing requires federal court to satisfy itself that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.") (marks omitted).

**A. <u>The Elements of Standing and the Burden of Proof</u>**

The Supreme Court has held that "the irreducible constitutional minimum of standing" consists of three elements: an injury-in-fact, suffered by the plaintiff; a causal connection between the injury and the complained-of conduct; and a likelihood that a favorable decision will redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of demonstrating each of these elements, which "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*. at 561.

Thus, in responding to a summary judgment motion, a plaintiff "can no longer rest on [ ] 'mere allegations,' but must set forth by affidavit or other evidence 'specific facts' [supporting standing] which for purposes of the summary judgment will be taken to be true." *Id.*, *quoting* Fed. Rule Civ. Proc. 56(e). *See also Utah Assoc of Counties*, 455 F.3d at 1100.

Here, Defendant contends that Plaintiff fails to meet the first element of standing by failing to show the existence of an injury-in-fact.

**B. The Doctrine of Organizational Standing**

Whether Plaintiff has met its burden of showing an injury-in-fact must be considered in light of the doctrine of organizational standing. As an organization bringing suit on behalf of its members, Plaintiff can only have standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Utah Ass'n of Counties*, 455 F.3d at 1099, quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 3333, 342-43 (1977). Plaintiff need only show that a single member of the organization would have standing in her own right to bring the instant suit to show that it has organizational standing. *See Warth*, 422 U.S. at 511.

Defendant contends that Plaintiff does not have organizational standing to bring this suit because it has failed to show that any of its members have suffered an injury-in-fact as required to possess individual standing.

**C. Whether Plaintiff Employee Nicole Rosmarino Has Suffered an Injury-in-Fact**

Plaintiff claims that it has set forth "the necessary facts" to show individual standing through one of its members, Dr. Nicole J. Rosmarino. (Doc. 23 Ex. 1 at 12). Dr. Rosmarino is presently employed as Plaintiff's Wildlife Program Director, pursuant to which she co-authored the ESA petition at issue in this litigation. (Doc. 23 Ex. 2, Rosmarino Aff. ¶¶ 2-3). In order to establish that Dr. Rosmarino suffered an injury-in-fact, Plaintiff must establish that she suffered "an invasion of a legally protected interest that is both (a) concrete and particularized and (b)

actual or imminent, not conjectural or hypothetical." *Nova Health Sys. v. Gandy*, 416 F.3d 11549, 1154 (10th Cir. 2005) (internal citations omitted).

Dr. Rosmarino has submitted an affidavit in which she states that she will be personally harmed by Defendant's rejection of the proposed ESA listing of the many-flowered unicorn plant in two ways: First, because the plant's omission from the heightened protections conferred by the ESA "represents a loss of biodiversity," (Doc. 23 Ex. 2, Rosmarino Aff. ¶ 13); and second, because "the potential loss of this unique species from the terraces along the Rio Grande in west Texas and northern Mexico harms my use and enjoyment of this area." *Id.* ¶ 14. As evidence of the latter interest, Dr. Rosmarino describes an October 2009 visit she made to Big Bend National Park, in Brewster County, Texas, during which she "scoured the banks and sand bars of the Rio Grande in a variety of locations looking for rare plants, including [the many-flowered unicorn plant]," which she failed to encounter. *Id.* ¶ 15. Dr. Rosmarino further states that she intended to visit Big Bend again in late October 2010 to again search for rare plants including the many-flowered unicorn plant, "but I will likely have to reschedule that trip due to family commitments." *Id.* ¶ 17. (Indeed, Dr. Rosmarino did not ultimately make a return visit to Big Bend in October 2010).

Defendant argues that the record is devoid of evidence that Dr. Rosmarino has a legally cognizable interest in the many-flowered unicorn plant, and is replete with evidence that Plaintiff attempted to meet the standing requirements only after serving notice of its intent to file the instant suit. According to Defendant, the many-flowered unicorn plant was simply one of hundreds of species listed on the NatureServe database around which Plaintiff has sought to launch a "coordinated litigation and advocacy campaign whose goal is forcing the federal government to devote more resources to addressing a planet-wide 'biodiversity crisis.'" (Doc. 37 at 18-19). Defendant points to the facts that the plant was one of 475 species for which Plaintiff pursued an ESA listing in its June 2007 petition; that Dr. Rosamarino conceded at her deposition that she first learned of the species at issue only in the course of preparing the petition, (Doc. 37

Ex. 8, Rosmarino Dep. at 28:14-28:15); and that the instant suit was merely one of 36 different lawsuits taken in commemoration of the 36th anniversary of the ESA – described by Dr. Rosmarino in a WildEarth press release as "an eight-week long initiative to push the U.S. government to more aggressively respond to the bio-diversity crisis," as part of a campaign called the "BioBlitz." (Doc. 37 Ex. 3).

**1. Dr. Rosamarino's Interest in Protecting Bio-Diversity**

As a threshold matter, the Court finds that Dr. Rosmarino's claim that she will be harmed by the potential "loss of biodiversity" posed by the many-flowered unicorn plant's exclusion from the ESA list is insufficient to show an injury in fact. Dr. Rosmarino declares that the possibility that the plant at issue could be rendered extinct without government intervention is a signifier of a wider "extinction crisis, in which we are losing species at rates that are orders of magnitude higher than the natural rate of extinction. . . . . Accordingly, the potential extinction of the [many-flowered unicorn plant] due to the current lack of effective legal protection harms me personally because it represents a loss of biodiversity." (Doc. 23 Ex. 2, Rosmarino Aff. ¶ 13); *see also* Doc. 37 Ex. 8, Rosmarino Dep. at 19:17-19:24 ("I'm very pained to know that our species is driving other species off the face of the earth. The many-flowered unicorn plant is an example of this. . . . There are many victims, such as the many-flowered unicorn plant."). While Dr. Rosmarino's point is a serious one, the Supreme Court has made it plain that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs*, 528 U.S. 167, 181 (2000); *see also Valley Forge*, 454 U.S. at 486 ("standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy"). Thus, the Court finds that Dr. Rosmarino's generalized grievance with Defendant's response to the "extension crisis" does not empower her to bring a suit to vindicate a cognizable interest in the many-flowered unicorn plant.

**2. Dr. Rosmarino's Recreational Interest in the Many-Flowered Unicorn Plant**

As noted above, Dr. Rosmarino also attests that the potential loss of the many-flowered

unicorn plant from "the terraces along the Rio Grande in west Texas and northern Mexico" – its historical range, according to the NatureServe database -- "harms my use and enjoyment of this area." (Doc. 23 Ex. 2, Rosmarino Aff. ¶ 14). Plaintiffs in environmental cases "adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)); *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) ("[A]n individual can establish 'injury in fact' by showing . . . that the person's future life will be less enjoyable - that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction.").

The Court will apply the injury-in-fact requirements to Dr. Rosmarino's allegations of actual and prospective recreational harm.

***Whether injury was particularized***

An injury is particularized when it affects a plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 356 n.1. Dr. Rosmarino acknowledges that she has never seen a many-flowered unicorn plant – either live or as a preserved specimen – and that she learned of the existence of the species for the first time in 2007, while searching the NatureServe database for all species ranked as "G1" or "G2" in the Southwest region. Nevertheless, Dr. Rosmarino has testified of her affinity for the plant's "devil's claw" fruit, which she has observed among other species in its genus and considers "such a clever evolutionary adaptation" because it "create[s] a hook that hooks onto passersby, who then grind the pod and release the seeds and disseminate them across the landscape." (Doc. 37 Ex. 8, Rosmarino Dep. at 28:2-28:6). She further describes her desire to have "the devil's claw to snag on my hiking boot," because it "belongs there" as part of the landscape. *Id.* at 24:12-24:13. According to Dr. Rosmarino, "it would take a very hardened soul not to take an interest in that kind of plant." *Id.* at 27:23-27:24. In light of her testimonial evidence, the Court finds that, whatever the harm to Dr. Rosmarino, it is

particularized, as she has declared herself to be affected by the potential loss of the many-flowered unicorn plant specifically, and not merely as a piece of the ecosystem.

***Whether injury was concrete and actual***

In order to adequately state an injury-in-fact, Plaintiff need only show that the harm to Dr. Rosmarino was actual *or* imminent. While Plaintiff conclusorily states that Dr. Rosmarino was injured at the time suit was filed in February 2010, there is no evidence in the record tending to show that she suffered actual harm as a result of her lone pre-filing visit to the presumed habitat of the many-flowered unicorn plant, Big Bend National Park, in October 2009. Whatever her affinity for the species, it is undisputed that Dr. Rosmarino went to Big Bend outside of its flowering season (Doc. 23 Ex. 2, Rosmarino Aff. ¶ 17) and that seeking it out was not a primary objective of her visit. *See, e.g.,* Doc. 37 Ex. 8, Rosmarino Dep. at 37:14-37:21 (Rosmarino testifying that she took the trip because she had "always wanted to visit Big Bend National Park" and "wanted to see rare plants for certain, but [also] just [wanted to see] the general flora and fauna of that area"); *id.* at 122:20-122:25 ("I went primarily because I really wanted to see Big Bend" and incorporated searches for different species "rang[ing] from . . . black bears to mountain lions to tarantulas to the many-flowered unicorn plant" – into the trip); Doc. 37 Ex. 5 (Rosmarino's and Tutchton's registration form for entry into Big Bend National Park, listing purpose of visit as "birdwatching"). At no point in the record does Dr. Rosmarino describe how she was harmed by her failure to find the plant on the basis of her single visit.

Thus, in the absence of any evidence that Dr. Rosmarino manifested a concrete interest in the many-flowered unicorn plant that was actually harmed in October 2009, Plaintiff must demonstrate that the species' exclusion from the ESA list will produce "imminent" harm to Dr. Rosmarino.

***Whether injury was concrete and imminent***

In the Tenth Circuit, "the appropriate standard to assert future injury is one that generally mirrors the specificity and concreteness of past performances." *Southern Utah Wilderness*

*Alliance (SUWA) v. Sierra*, No. 2:07-cv-00199-CW, 2010 WL 4782976, at *5 (D. Utah, Nov. 16, 2010) (collecting cases). In the context of environmental cases, because an organization member's past visits to a recreational area will "not [typically] evoke a well-established trend, pattern, habit, or practice that can be relied upon with confidence regarding the specific site involved in the litigation, more particularity in the planning is required." *Id.* Put another way, "unless there is evidence of repetitious use of . . . the specific land in question, there cannot be a 'credible allegation of desired use' without specific concrete plans, and as such, no immediacy of harm." *Id.*, citing *Summers v. Earth Island Inst.*, 555 U.S. 448, ----, 129 S. Ct. 1142 (2009); *Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004). Here, because Dr. Rosmarino visited the habitat of the many-flowered unicorn plant only one time prior to Plaintiff's bringing suit, the Court must assure itself that she had "specific concrete plans" to return there when the Complaint was filed in February 2010. *See Tandy*, 380 F.3d at 1284 ("[s]tanding must be analyzed from the facts as they existed at the time the complaint was filed.").

Dr. Rosmarino has testified that while still on her first visit to Big Bend in October 2009, she determined to return to the park exactly one year later, in October 2010.[4] (Doc. 37 Ex. 8, Rosmarino Dep. at 75:14-75:18). Plaintiff, however, fails to provide evidence that Dr. Rosmarino's stated intent gave rise to specific concrete plans for a follow-up visit. The record makes no mention of specific dates set aside for the return trip and contains no evidence of any measures taken by Dr. Rosmarino in preparation for her travels, despite the fact that her subsequent testimony indicated that the trip was only cancelled at the eleventh hour. Indeed, in

---

[4]Plaintiff argues that the Court should consider as additional evidence supporting standing the fact that, over a year after suit was filed in the instant case, Dr. Rosmarino made a return trip to Big Bend in May 2011. Dr. Rosmarino testified that the trip was timed in part to coincide with the flowering season of the many-flowered unicorn plant, when she believed she would "have maximum chances of catching the plant in the bloom" and the best opportunity of distinguishing it from other members of its genus. (Doc. 40 Ex. 6, Rosmarino Dep. at 75:19-75:20, 77:23-77:25). The law is clear, however, that a plaintiff must have had standing at the time the complaint was filed. See *Tandy*, 380 F.3d at 1284; *SUWA*, 2010 WL 4782976, at *6 (disregarding testimonial evidence of visits to recreational site occurring after commencement of action). Thus, the Court will not consider any visits to Big Bend that were not alleged to have been firmly intended at the time suit was filed as evidence supporting standing.

her October 8, 2010 affidavit -- submitted the very month for which the return to Big Bend was allegedly intended – Dr. Rosmarino suggested equivocally that taking the trip was still a possibility. *See* Doc. 23 Ex. 2, Rosmarino Aff. ¶ 17 (testifying that she "will *likely* have to reschedule . . . due to conflicting family commitments") (emphasis added); *see also* Doc. 40 Ex. 1, Second Rosmarino Aff. ¶ 4 ("I contemplated the potential need to reschedule in my original declaration."). Plaintiff offers no evidence as to what "rescheduling" the trip entailed for Dr. Rosmarino, and indeed offers no evidence that the trip was ever "scheduled" in the first place.

Plaintiff's contention that Dr. Rosmarino firmly intended to return to Big Bend in October 2010 is further contradicted by the recent testimony of her companion, Plaintiff's General Counsel, James Tutchton, in a similar case pending between the parties.[5] Tutchton accompanied Rosmarino to Big Bend in 2009 and was, according to her, part of her plans to return there in October 2010. Appearing as a deponent in a District of Colorado action challenging Defendant's denial of another of Plaintiff's ESA petitions, Tutchton testified that the couple knew they wanted to visit a recreational site in October 2010, but had yet to settle on a destination when they realized they would have to abandon their plans to travel altogether. Specifically, Tutchton testified that while he and Rosmarino considered Big Bend the "leading contender" to be their vacation destination for October 2010, (Doc. 37 Ex. 4, Tutchton Aff. at 71:10-71:12), they were also contemplating traveling to Glacier National Park in Montana instead, (*id.* at 70:18-70:21), and were still in the process of negotiating a destination with his children when it became clear that scheduling conflicts would make a trip of any kind impossible. *See id.* at 70:22-71:3.

Plaintiff responds that "[i]rrespective of whether Dr. Rosmarino and Mr. Tutchton are often traveling companions, what he thought she might be doing in October 2010 is inconsequential. . . . Mr. Tutchton's alleged uncertainty of his own plans is irrelevant." (Doc. 40

[5]*See* Doc. 37 Ex. 4, Jan. 21, 2011 Deposition of James J. Tutchton in *WildEarth Guardians v. Salazar*, No. 1:10-cv-00011-JLK (D. Colo.) (challenging denial of the Secretary's rejection of Plaintiff's petition to list the narrow-footed hygrotus driving beetle under the ESA).

at 15-16). Plaintiff's argument overlooks Dr. Rosmarino's own testimony that Tutchton and his family were to accompany her on her second visit to Big Bend, and, further, that the extracurricular activities of Tutchton's children were the reason she did not make the trip as allegedly intended. (Doc. 37 Ex. 8, Rosmarino Dep. at 76:10-77:13; Doc. 40 Ex. 1, Second Rosmarino Aff. ¶ 2).

Because Dr. Rosmarino's professed intent to return to Big Bend on the one-year anniversary of her prior visit is unsupported by evidence that she made concrete plans to do so, the Court finds that Plaintiff has failed to show imminent harm. Moreover, Dr. Rosmarino's providing a month and year for the allegedly anticipated trip, absent any evidence of particularity in the planning, makes the situation here no different than in *SUWA*, in which the court found organization members' testimony that they intended to return to a recreational site "certainly within the next year" of making their affidavits insufficient to show an imminent injury-in-fact. *SUWA*, 2010 WL 4782976, at *7. ("Because members' past visitations do nothing more than created isolated visits to the areas in question . . . simply declaring their intent to return within the course of the year does not suffice."). *See also Lujan*, 555 U.S. at 564 (affiant member's professed desire to view threatened animals in their native habitat in Sri Lanka, unsupported by specific plans of future visit, was insufficient to confer standing on plaintiff organization).[6]

When an organization and its afffiants challenge an ESA listing determination, they at least partly control the possibility of injury to themselves. *See Lujan*, 504 U.S. at 564 n.2. Consequently, a plaintiff or affiant who anticipates "seeking an injury" – in this case, by declaring her intent to seek out an allegedly threatened species in its native habitat – "must

[6]By contrast, the cases cited by Plaintiff involve repeated use of a recreational site and/or evidence of concrete plans to return there. *See, e.g.*, *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1265 (10th Cir. 2002) (plaintiff organization had standing where it demonstrated "its members have worked to protect" sites at issue and used them "for recreational and educational purposes"); *Vt. Pub. Interest Research Grp. v. FWS*, 247 F. Supp. 2d 495, 510 (D. Vt. 2002) (plaintiff had organizational standing through affiants whose "long-term and regular use and enjoyment of, and interest in protecting, [recreational site's] biodiversity, and in particular its rare species, sets them apart from the general public").

convince the court that this intention is not fleeting." *SUWA*, 2010 WL 4782976, at *7. Because Plaintiff has failed to demonstrate that Dr. Rosmarino's stated intent resulted in the formation of concrete plans, the Court finds that the injury to her remained speculative at the time suit was filed.

Thus, because Plaintiff fails to meet the first, injury-in-fact prong of the standing analysis, it is unnecessary to consider the second or third prongs of causality and foreseeability, or to reach the merits of Plaintiff's challenge to Defendant's ESA listing determination.

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's *Motion to Strike Extra-Record Material* (Doc. 38) is **GRANTED**, Plaintiff's *Motion for Summary Judgment* (Doc. 23 Ex.1) is **DENIED** and Defendant's *Motion for Summary Judgment* (Doc. 38) is **GRANTED.**

**DATED** this 30th day of September, 2011.

MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Melissa Anne Hailey

Attorneys for Defendants:
Daniel Pollak
Ricky Doyle Turner, Jr.
Jan Elizabeth Mitchell